Good afternoon. May it please the court. Good afternoon, Judge Fischer. Can the court hear me okay? I think so. I think you're good. I represent the appellant. Unless the court has a different preference, I wanted to focus on the Crawford argument, which is argument two in the opening and reply brief. And if I have time left, maybe talk a little bit about the Dahlberg ruling. But if the court wanted me to begin somewhere else, I'd be happy to do that. You wanted to focus on, I'm sorry? Crawford, which is the second argument, the argument about the computer fingerprint database. Okay. That's the argument that we made a Crawford challenge to evidence that my client's prints came out as a match from a computer database called Ident. And we've argued that that violates Crawford because the computer program, essentially, it duplicates what a normal fingerprint examiner would do. Was the database search testimonial evidence? Well, I would think if you ask me if it's testimony hearsay. What's your best case? Because what we have here is a hearsay statement that's made in aid of a criminal investigation to suspect attempted illegal entry. I mean, not everybody gets taken to secondary inspection and have their fingerprints run when they enter the United States. Most people just show their passport and then they wave through after maybe some questions. In this case, the testimony was that the first officer, I think it's Officer Martinez, but anyway, the first officer suspected something was wrong with my client's entry documents. He was handcuffed, taken to secondary, and that's when the computer fingerprint database analysis was done. I think it's the primary purpose of such a report is clearly to aid in an investigation to attempt a criminal activity at that point. There's no administrative purpose. There is no non-criminal purpose for that type of search in that context. I don't know if that answered your question or not. Well, I'm still not finding the best case, but I'm probably a little more interested in on whether the part of the – let's see. So it's – I guess it's conceded that this would go back on the supervised release, right? Right. Okay. On then, what about the – that part of the – even though your client has a valid removal, some was found not to be, and so doing a harmless error analysis on that. Well, our position is that the harmless error analysis here doesn't apply, and the reason for that is that this is an appeal from a pretrial collateral challenge to the 06 removal, and if such a challenge is successful as it should have been as to the 06 removal, it knocks out the element of prior deportation before illegal entry. So it would go – it would actually challenge the element. So that was the situation in the Valdivia Flores case on which we're relying, and the only possible factual difference between us and Valdivia Flores is that here is a government presented evidence of two different removals. So six removals, which I think we all agree cannot be relied on to sustain the charge, and a 93 removal. And the problem, I think, for the government is that the way the indictment and the verdict form reads, the case is being submitted to the jury only on the validity of the 06 removal. At least the jury would reasonably likely understand the inquiry to focus on the 06 removal without having any direction that they should consider the 93 removal in deciding if there was an illegal entry or not. But suppose that constitutes an offending violation. You didn't object at the time of sentencing. Well, right, but we would have no reason to. Why would you have no reason to? Because we have litigated the 06 removal as extensively as we can. The court overruled us. Again, the indictment – But your challenge, your pre-trial challenge was the broader one, that the whole thing should have been dismissed. Did you specifically say, did you specifically challenge the sentencing enhancement? Well, no, because, again, I would come back to at that time there was no reason to separately challenge the sentencing enhancement because my reading of the record is the government was proceeding on the 06 and 015 removal, which are effectively the same thing. We've litigated the validity of the 06 removal. The court considered the argument, overruled them. I think we've preserved the issue. And at that point, what good would an objection on that basis have done? Because at that point, Valdivia Flores has not been decided. So the judge would have said it would have been a futile objection under the law as it existed at the time of sentencing. And frankly, I think counsel wouldn't have any reason to do it. Because from her standpoint, the issue of the validity of the 06 removal was extensively litigated in the pre-trial motion, and the court disagreed. So for this reason, I respectfully disagree with the idea that this is an apprendiate problem. I think if the court agrees with me that the case on the illegal entry charge was submitted only on the 06 removal, then what it does, once Valdivia Flores has decided, it knocks out an element of the illegal entry charge period. Because one of the elements is that you have to have been deported before you are now attempting to enter the United States. So if the jury understands the case as being based on the 06 removal, and if Valdivia Flores knocks that out, and I think we're in agreement on that, then that knocks out an element. It's not a sentencing problem. I think the element of the illegal entry charge is gone. There were other entries besides the 06 one. Right. There were other prior entries, and the jury could have convicted based on that. I agree. As I understand it, it's been a long day, but what we're talking about is not the general verdict of guilty, but what the sentence should have been. Well, I'm actually disagreeing with that. I understand the question, and what I'm saying is that, yes, there was evidence of 93 removal presented at trial, along with the 06 removal. But if you look at the indictment, and if you look at the verdict form, they focus only on the removal happening after October 18th, 2008. No, but my question is predicated on this. As far as the general verdict of guilty, it didn't have to be. It could have been based on some other prior removal. What should be, what I think your argument is, is that the jury never found that. We don't know what particular prior removal the jury found. Right. There's nothing in the verdict chain. That is my argument. And therefore, because there was no evidence of a jury finding, there was an apprendee violation. I mean, am I making an argument that you're not making? No, no. No, no. I understand the court's question, and I think that is sort of my argument. My question is, is why didn't you object? Well. And you got the pre-sentence report, which indicated what the judge was, what probate. You didn't get the pre-sentence report. But this, nobody focused on which charge, which prior removal supported the 1326 charge. Because everybody sort of assumed that they're both in a valid basis. So I looked at the pre-sentence report, and I looked at the sentencing. Nobody focused on that issue at all. Again, prior to Valdivia floors, there was no reason to. Because there were two separate removals. The charge and the verdict form focused the jury's attention on the 06 removal. That has been litigated. So from the standpoint of defense counsel, they would have no reason to object at sentencing. Because what would they object to? Now, if the court is inclined to view this as an apprendee violation, I am making an argument. I objected to the sentence in saying that there was no jury finding that, while the general verdict could stand because any prior conviction would have upheld the general verdict, the enhancement can't stand because the jury, you don't know anymore, that the jury made a finding that was necessary to the enhancement. Wasn't that an obvious objection? Your Honor, I can't speak for counsel handling the matter of trial. But by inference, I would think that given the pre-trial litigation and the state of law at that time, I think they could have reasonably thought this was preserved in the sense that the case is proceeding only on the basis of the 06 removal. Yes, the 93 removal was introduced as a part of the A file at trial. But nobody talked about that as a basis for the illegal reentry charge. So given that the issue of the 06 removal was litigated extensively, I just think it wouldn't be an objection to counsel based on the law as it stood before Valdivia Flores was decided. And you had a controlling circuit precedent that said that. Now, afterwards, yes, now it's not an objection. But, again, I would actually urge the Court to look at it not only as an apprendee issue, but also as a situation where there is a real possibility that the only theory on which the illegal reentry charge period, not just the penalty, but the whole charge was submitted to the jury, was only based on the 06 removal. If the Court agrees with me on this, then the whole charge has to be dismissed. If the Court doesn't agree with me and the Court decides to do harmless error, I would think at minimum you cannot adopt the analysis that the government urges you to adopt, that the evidence is uncontroverted because at that point we don't know what was the basis for the charge. Again, as I read the indictment and the instruction and close the argument of counsel on what was happening in sentencing, we had no reason to contest the 93. So it would be unfair to us to say, well, you should have objected to the 93 removal. We don't really have an idea that this is what the government is basing their case on. Everybody perceives the assumption that no 06 removal is a valid basis. The objection was made. It was litigated. But everybody moved on from that. Did the jury hear evidence on all three removals? Yes. Yes, that's not disputed. Yes, they presented evidence of the 93 removal.  Do you want to reserve time for rebuttal? Yes, Your Honor. Okay. Thank you. Do you have a question, Judge Fischer? I have to sign a document in front of a notary, and I don't know how it will be to get this done without interrupting. So can I just go offline for a few minutes and sign this document? Sure, sure. We'll just all stand by. Okay. Stand by. We can turn – I don't know if we can – yeah. You're muted, so yeah. All right. I guess relax as much as you can relax here. We'll all relax. You can sit. Of course you've been doing that all morning, right? Yeah. You decide what you want to do with Weinberg. I'm going to give him a call. Okay, I'll call. It also depends on where he wants to go, so that solves the problem. But if he doesn't, I'll tell Paul that, look, we've just finished all the arguments, so we're going up to Fischer, and I can't predict it. He knows we might not take as long as we thought. Yeah. I'm going to ask Fischer what he wants to do, if he wants to break for lunch before. Call him up there right now. I'm going to ask Fischer what he wants to do. I need that. Yeah, I understand. We can finish this up. All right, we're back. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, the sole issue as to the 1326B question is one of sentencing and one of apprendee. In Al-Mandaris' Torahs, the Supreme Court held that the subsection B does not define a separate crime. It's a penalty provision that only affects the recidivist sentencing range. A few years after that, this Court in Covey and Sandoval held that while the district court can make a finding as to the criminal conviction, the sort of the date of removal is something that has to be proven to a jury beyond reasonable doubt under apprendee. After that came out, there were a number of cases sort of already in the pipeline where the United States had indicted without including the date of removal in the indictment and not proven it to the jury or had it admitted. And this Court held in Salazar-Lopez and Calderon-Segura that that failure to include the removal date altogether was harmless beyond a reasonable doubt so long as there was overwhelming and uncontroverted evidence in the record showing that the defendant was, in fact, removed on a date that came after the felony conviction. The only difference between our case and those cases is that here, rather than essentially leaving the removal date off the indictment altogether, the United States included a removal date that was subsequently found to be invalid based on the change in this Court's case law. But the analysis is the same, that is, whether there was overwhelming and uncontroverted evidence of removal following a felony conviction. In this case… And you put in three different… Correct. …removals? We did. As to the 1993 removal, the United States, in S.E.R. 3 through 7, introduced an order to show cause and immigration judge order and a warrant of deportation with the defendant's fingerprint, none of which was directly challenged at trial. And that's exactly the same sort of overwhelming and uncontested evidence of a removal that this Court has held in previous cases as enough to find harmless beyond a reasonable doubt. Okay. And you concede that this has to go back on some conditions of supervision that have subsequently been determined to be unconstitutional, so they've got to shore that up. We do, Your Honor. And then as to Your Honor's question as to how we know what the jury would have found as to which of these removals, I think there's two answers to that. One is that the defense… My point is that we don't know what the jury found because the jury's verdict sheet didn't state. Right. And I think if you look at what the defense was that was actually presented at trial, it was the same for all three of the removals. The defense was, that's not me. I'm the guy whose name is on the card. There was never any differentiation between the 93 or the 2006. The entire defense was, you got the wrong guy. So there's no reason to believe that the jury would have sort of found that he was removed based on the uncontested 2006 documents but not the 1993 documents. Furthermore, in Salazar-Lopez, this court considered a similar situation when there was two removals presented at trial, one of them good for friendly purposes and one of them bad, and the court simply focused its attention on the good one and said is there overwhelming uncontroverted evidence in the record as to that one and then affirmed on harmlessness grounds. So we would urge the court to do the same here. I'm happy to address the Crawford or the fingerprint issues. I think the Crawford is clearly not a testimonial statement. I think the defense indicated that the fact that the defendant went to secondary inspection meant that this was going to be used sort of in a criminal proceeding, but that's simply not the case. This was an IDENT system that's used to run people's fingerprints when they come through the port of entry to determine who they are and if they are who they say they are. This is primarily an immigration-based procedure for a busy port of entry, and there's about 10 steps between that and any eventual criminal prosecution, much less criminal prosecution that would use that IDENT printout as a substitute for it. So for that reason, even aside from the fact that this was computer-generated and wouldn't even implicate the Sixth Amendment Confrontation Clause, the District Court properly allowed that evidence. All right. Judge Fischer, did you have any additional questions? No. Thank you. Judge Corman? Sorry for the interruption. Thank you. All right. So then we'll just have you have rebuttal time. On the Crawford issue, I respectfully disagree with the opposing counsel. I think the testimony from the officer was that you go to secondary inspection only if they suspect that something's wrong with your documents. It is not an administrative search. It is only if they suspect that you have fake documents. I mean, that was testimony at trial. So I guess the record I will submit to the court's reading of it, but I read through it. My reading of the record is that you go to secondary if they suspect that your documents are problematic. And, in fact, I think there was specific testimony on that point. And I apologize. I don't recall whether it was Officer Martinez or Officer Nazarian who testified to that fact, but it's definitely in there. So I disagree with counsel that this was not testimonial. I think this is precisely like a bull coming, in a sense, that you're generating a comparison that is going very – the primary purpose of this is to help your suspicion that you think this person is here, trying to get here illegally. It's not an administrative thing that we do for everybody. And also on counsel's point about it being a computer, David Beers, the government expert himself, said that the computer examination duplicates what he does. It's the same comparison of Gallatin point details. So what we're doing is we're putting the same examination, which I think the evidence in the record here already says it's a subjective examination, and you remove it a step further from the defense by putting it in a black box. So not only can I challenge the subjective examination, cross-examine them on that point, now I can't even get anybody who tells me how the comparison was made. And those witnesses that the government presented could only say what you do on the intake end, how you roll prints, but that doesn't help the confrontation clause argument because with an examination like this, it is relevant how the program was set up to determine which points contribute to match, how many do count for match. Basically, because the examination is the same, whatever questions you would ask, David Beers understands, you would ask the person who has set up the algorithm for this program. And I guess that was my response. All right. Thank you very much. Okay. Thank you both for your argument. This court will stand in recess until tomorrow at 9 a.m. Thank you, everyone.
judges: Fisher, Callahan, Korman